AO 91 (Rev. 5/85) Criminal Complaint
========================================================================

# United States District Court

FILED
CHARLOTTE, N.C.

MAR 12 2007

WESTERN DISTRICT OF NORTH CAROLINA

U. S. DISTRICT COURT
W. DIST. OF N. C.

UNITED STATES OF AMERICA

v.

EVERADO LEON
TIMMY LEE MCALPIN
ROBERTO SOTO-MARTINEZ
MARCILINO MIGUEL DIAZ-PEREZ

(Name and Address of Defendant)

CRIMINAL COMPLAINT

CASE NUMBER: 3:07Mj49

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about January, 2005, to the present in Alexander and Catawba Counties, in the Western District of North Carolina defendant(s) did,

(Track Statutory Language of Offense)

possess with intent to distribute, a quantity of cocaine base, a schedule II controlled substance, aid and abet in the possession of a quantity of cocaine base, a schedule II controlled substance, and conspiracy to possess with intent to distribute, a quantity of cocaine and cocaine base, a schedule II controlled substance. Said offenses involve a mixture and substance containing in excess of 50 grams of cocaine base and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine.

in violation of Title 21 United States Code, Section(s) 841 & 846;

I further state that I am a(n) ATF Special Agent, Mark Triplett and that this complaint is based on the following facts:

See attached affidavit

Continued on the attached sheet and made a part hereof: [X] Yes [] No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

March 12, 2007                              at   Charlotte, North Carolina
Date                                             City and State
United States Magistrate Judge                   _____
Name and Title of Judicial Officer               Signature of Judicial Officer

# AFFIDAVIT

1. I, Mark Triplett, being duly sworn, depose and state that: I am a Special Agent with the Bureau of Alcohol, Tobacco Firearms and Explosives (ATF, United States Department of Justice). I have been so employed since September 2001 and I am currently assigned to the Greensboro, North Carolina Field Office. My duties are to enforce violations for offenses against the United States specifically offenses related to Federal firearms laws. Prior to my employment with ATF, I was a law enforcement officer in the State of North Carolina for twelve years. I was assigned to the Narcotics Division for the Catawba County Sheriff's Department in Newton, North Carolina for eight years. I have also conducted numerous felony investigations that have been prosecuted in Federal and State court. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy; as a result of my training and experience as an ATF Special Agent, I am familiar with Federal criminal laws and know that it is a violation of: 21 USC 841 (a)(1) and 21 USC 846, to possess with intent to distribute and conspire to distribute one or more controlled substances, that is a mixture and substance containing a detectable amount of cocaine base, commonly known as crack cocaine and a mixture and substance, a detectable amount of cocaine, a Schedule II controlled substance.

2. On March 1, 2007, a Warrant for Arrest was issued for James Matthew Parsons Jr. in the United States District Court for the Western District of North Carolina. The warrant was issued as a result of a Bill of Indictment filed on February 28, 2007 involving James Matthew Parsons Jr. and others who conspired with intent to distribute a detectable amount of cocaine base and a mixture and substance of a detectable amount of cocaine.

3. On March 9, 2007, S/A Triplett, Special Agent Carl Hughes with the North Carolina State Bureau of Investigation and Detective Sergeant M.C. Pennell of the Alexander County Sheriff's Office arrested James Parsons Jr. in Alexander County, North Carolina. James Parsons Jr. waived his Miranda rights and provided a statement to S/A Triplett. James Parsons Jr. stated that he had approximately one ounce of crack cocaine but that he had provided the crack cocaine to Timmy Lee MCalpin on March 8, 2007 to conceal away from Parsons' residence.

4. When Parsons was arrested MCalpin was in a vehicle with Parsons. Under the direction of Detective Pennell, Parsons told MCalpin to go get the crack cocaine that he had hidden. MCalpin was not in custody and voluntarily took S/A Hughes to a location near Gravel Hill Road in Alexander County. Buried in the woods was approximately 30 grams of a hard white rock substance that was field tested positive for cocaine base.

5.  Parsons stated that his supplier of cocaine is a Hispanic male known to him as "Piggy". Parsons stated that he had received approximately four ounces of cocaine a week for the last six months from "Piggy". Parsons stated that "Piggy" always supplied him powder cocaine but that he knew that Parsons was converting it to crack cocaine because he had watched Parsons "cook" the cocaine into crack on at least three occasions. Parsons stated that he received one ounce of cocaine from "Piggy" on March 8, 2007 and that "Piggy" told Parsons that he had a quarter kilogram of cocaine.

6.  Under the direction of S/A Triplett, Parsons made a consensually taped telephone call to "Piggy" at "Piggy's" cellular telephone number which is (828) 308-6697. "Piggy" agreed to bring four and half ounces of cocaine to Parsons' residence within thirty minutes.

7.  S/A Hughes and S/A Scott Akins with the North State Bureau of Investigation along with other deputies of the Alexander County Sheriff's Office conducted surveillance on Parsons' residence. A vehicle driven by Everado Leon arrived at the residence along with another Hispanic male passenger. Both individuals were asked to exit the vehicle and the passenger pointed to his pockets to indicate that something was in his pocket. Approximately 150 grams of a white substance that has been field tested positive for cocaine was located. The passenger was later identified by an interpreter as Marcelino Miguel Diaz-Perez.

8.  S/A Hughes advised Everado Leon of his Miranda rights and he agreed to provide a statement. Leon confessed to supplying Parsons with cocaine and stated that he had sold Parsons one to three ounces of cocaine a week for the last two months. Leon stated that Diaz-Perez was not involved in the distribution of cocaine and that he is a homeless person. Leon also indicated that he had an additional four ounces of cocaine at his residence and provided written consent to search his residence. S/A Hughes took Leon to his residence in Alexander County and did not locate the cocaine. S/A Hughes seized approximately two hundred grams of marijuana. Leon admitted to S/A Hughes that he was untruthful and that he just wanted to tell his wife that he had been arrested. Leon later told S/A Hughes that his supplier of cocaine is Roberto Soto-Martinez, who lives next door to Leon.

9.  With the assistance of an interpreter, Captain Keith Warren of the Alexander County Sheriff's Office conducted a non-custodial interview with Diaz-Perez. Diaz-Perez stated that he lived in vehicle until Martinez offered him a place to stay at Martinez's residence. Diaz-Perez stated that he has lived with Martinez for approximately six months. Diaz-Perez stated that Martinez is a relative of Leon and that Leon had given him twenty dollars to hold the cocaine until Leon delivered it to Parsons. Diaz-Perez did not know Parsons but Leon had told him that he was a "black man". Diaz-Perez stated that Martinez had several bags of cocaine at Martinez residence that was described in size as kilogram quantities. Diaz-Perez stated that Martinez had three handguns in a nylon bag and that several thousand dollars were wrapped in rubber bands at Martinez residence.

10. Diaz-Perez agreed to go to Martinez residence and provide written consent to his bedroom. When Agents arrived Martinez was located at the residence. Martinez stated that he was not involved in drugs. Martinez stated that Diaz-Perez was also not involved in the distribution of cocaine. Martinez provided written consent to search his residence. Located inside the residence were tally sheets which are indicative of distribution of controlled substance. Located in the trash and microwave were kilogram size bags that contained a white residue that field tested positive for cocaine. Located in a nylon bag was Winchester .380 caliber ammunition. Located inside the residence were several small rubber bands as described by Diaz-Perez. Diaz-Perez also stated that Martinez and Leon would conceal their cocaine in the woods. Located in the woods adjacent to Martinez and Leon residence was a plastic bag that contained approximately 148 grams of a white substance that field tested positive for cocaine. Also located with the plastic bags was a set of digital scales.

11. Based upon the above information, I believe probable cause exists that Everado Leon, Roberto Martinez, Marcilino Diaz-Perez and Timmy MCalpin have possessed and conspired with James Parsons Jr. to possess with intent to distribute a detectable amount of cocaine base and a detectable amount of cocaine a Schedule II controlled substance in violation of Title 21, United States Code, Section 841 (a) (1) and 846.

Mark Allen Triplett Special Agent, ATF

Sworn to and subscribed before me this 12th day of March 2007.

U.S. MAGISTRATE/DISTRICT JUDGE